UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.               Case No. 19-cr-181-pp

BRANDON I. SMITH,

    Defendant.

---

**ORDER DENYING DEFENDANT'S *PRO SE* LETTER MOTION SEEKING SENTENCE ADJUSTMENT (DKT NO. 131) AND DENYING *PRO SE* LETTER REQUEST FOR SENTENCE CREDIT (DKT. NO. 132)**

---

  On October 22, 2019, the grand jury returned a seven-count indictment against the defendant and a co-defendant, charging the defendant with one count of attempted Hobbs Act robbery (Count One); one count of using, carrying and brandishing a firearm during and in relation to that attempted Hobbs Act robbery (Count Two); one count of Hobbs Act robbery (Count Three); one count of using, carrying and brandishing a firearm during and in relation to that Hobbs Act robbery (Count Four); and two counts of being a prohibited person in possession of a firearm (Counts Six and Seven). Dkt. No. 1.

  On August 17, 2021, the grand jury returned a superseding indictment against the defendant only. Dkt. No. 95. Count One of the superseding indictment charged the defendant (alone) with committing and threatening physical violence against an El Paso foods employee in furtherance of a plan to commit a Hobbs Act robbery. Id. at 1. Count Two charged him with using,

1

carrying and brandishing a firearm during and in relation to the act of violence against the El Paso employee. Id. at 2. Count Three charged the completed Hobbs Act robbery of a Speedway gas station. Id. at 3. Count Four charged the defendant with using, carrying and brandishing a firearm during and in relation to the robbery of the Speedway gas station. Id. at 4.

On October 12, 2021, the defendant signed a plea agreement pleading guilty to Count One of the superseding indictment (the violence against the employee of the El Paso food store in furtherance of a plan to commit a Hobbs Act robbery), Count Three of the superseding indictment (the completed Hobbs Act robbery of the Speedway gas station) and Count Four of the superseding indictment (using, carrying and brandishing a firearm during and in relation to the robbery of the Speedway gas station). Dkt. Nos. 104, 105-106. On March 9, 2022, the court sentenced the defendant to serve forty-eight months (four years) on each of the two Hobbs Act robbery counts (to run concurrently with each other and with the sentence imposed in Milwaukee County Circuit Court Case No. 16CF002378) and eighty-four months (seven years) on the gun charge; the law required the court to impose the sentence for the gun charge to run consecutively with the sentence the court imposed on the robbery charges, so the total sentence was 132 months eleven (11) years. Dkt. Nos. 113, 114.

On April 15, 2024, the court received from the defendant a letter. Dkt. No. 131. The letter mentions several "retroactive cases," says that the defendant does not have a lawyer and asks for guidance in how to get a federal attorney to help him "apply for these new terms" that he said applied to him.

2

Id. at 1-2. One of the "retroactive cases" to which the defendant's letter refers was a "case[] that went retroactive February 1st . . . such as the criminal history points, suppose to be deducted if you were on papers and also the [enhancements] suppose to come off if you got [enhancements] when you were sentence and the 65%--71% for the non-violent and violent case." Id. at 1. The court believes that the defendant meant to refer to change made to the United States Sentencing Guidelines by Amendment 821.

Under the United States Sentencing Guidelines in effect when the court sentenced the defendant (the 2021 edition of the Guidelines Manual), a defendant would receive two (2) additional criminal history points if he committed the offenses of conviction while "under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. §4A1.1(d) (2021 edition of the Guidelines Manual). In other words, if the defendant was on some kind of supervision at the time he committed his federal crimes, he would receive two (2) "status points" on top of any other criminal history points he'd accrued.

On November 1, 2023, Amendment 821 to the United States Sentencing Guidelines went into effect. Parts of that amendment are retroactive. Part A addresses "status points"—those extra criminal history points assessed against someone who committed the instant offense while under a criminal justice sentence (probation, parole, supervised release, imprisonment, work release or escape status). United States Sentencing Commission Guidelines Manual, Supplement to Appendix C, at 240 (2023). The new guideline—which is

3

retroactive—now states that a defendant who has less than seven (7) criminal history points receives no "status" points. U.S.S.G. §4A1.1(e) (2023 edition of the Guidelines Manual).

The court appointed a lawyer to assist the defendant in determining whether this amended guideline would help him. Dkt. No. 133. On June 20, 2024, that lawyer informed the court that he would not be filing anything on the defendant's behalf. Dkt. No. 135. The court suspects that is because this amended guideline does not help the defendant.

The defendant *was* on supervision in two state cases (Milwaukee County Case Nos. 12CF002411 and 16CF002378) on September 6, 2019, the date he committed the attempted robbery of the El Paso food store and the robbery of the Speedway gas station. Dkt. No. 108 at ¶85. The court *did* assess two criminal history points against him under the 2021 guidelines. Dkt. No. 113 at 2; see also, Dkt. No. 108 at ¶¶85-86. This meant that for the robbery counts, the defendant had an adjusted offense level of 23 and a criminal history category of V (based on his having eight criminal history points and two status points). Dkt. No. 113 at 2. The advisory guideline range for the armed robberies (an adjusted offense level of 23 in criminal history category V) was 84 to 105 months, or seven years to eight years nine months. Id.

If the defendant were to be sentenced today under the amended guideline, he would have only nine criminal history points (eight points and one status point, instead of two), which would put him in criminal history category IV. An adjusted offense level of 23 in criminal history category IV

4

Case 2:19-cr-00181-PP   Filed 06/24/24   Page 4 of 11   Document 136

results in an advisory guideline range of 70 to 87 months, or five years and ten months to seven years and three months. So the amended guideline *would* result in a reduced guideline range for the defendant. But the law allows a court to reduce a term of imprisonment based on a change in the applicable guidelines only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(2).

The applicable policy statement for Amendment 821 is U.S.S.G. §1B1.10. Subsection (b)(2)(A) of that policy statement says, ". . . the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection." In other words, the court cannot reduce the defendant's sentence to a sentence that is lower than the low end of the amended guideline range. The low end of the amended guideline range for the robbery counts is 70 months—five years and ten months. When it imposed sentence back in 2021, the court sentenced the defendant to *forty-eight* months on the robbery counts—a year and ten months *less* than the low end of the amended guideline range. Even though the defendant qualifies for a one-point reduction in his criminal history score, the court does not have the authority to reduce the defendant's sentence any further on the robbery counts.

Another change brought about by Amendment 821 was the creation of a new guideline—§4C1.1—that allows a court to decrease by two (2) levels a defendant's Chapter Two offense level if he has no criminal history points and

5

meets certain other requirements. Those requirements include not using violence or credible threats of violence during the offense of conviction and not possessing a firearm in connection with the offense. The court suspects that this amendment is what the defendant was referring to when he talked about removing the "enhancements." But the defendant does not qualify for a reduction under this new guideline, either. The defendant had eight (8) criminal history point at the time he was sentenced. More to the point, the defendant was convicted of possessing a firearm in furtherance of a crime of violence—the Hobbs Act robbery of the Speedway gas station. Because the defendant did not have zero (0) criminal history points and because he possessed a gun during the offense of conviction, he is not entitled to a two-level (2) reduction in his offense level under new guideline §4C1.1.

The defendant's letter also references something that he called the "Justin Taylor Act," which he describes as a "supreme ruling" which "found the attempted Hobbs Act robbery . . . that its no longer a crime of violence." Dkt. No. 131 at 1. The defendant asserted that he has "the same case far as the crime not been violence." Id. The court suspects that the defendant was referring to the United States Supreme Court's 2022 ruling in United States v. Taylor, 596 U.S. 845 (2022). In Taylor, the Court held that the crime of *attempted* Hobbs Act robbery does not qualify as a "crime of violence" for the purposes of 18 U.S.C. §924(c), which subjects a defendant to a mandatory minimum penalty if he uses, carries or brandishes a firearm during and in relation to a "crime of violence."

The defendant is correct that *one* of the crimes he committed was, in effect, an *attempted* armed robbery of the El Paso food store. Dkt. No. 95 at 1 (Count One of the superseding indictment alleging that the defendant "did commit and threaten physical violence against an El Paso Foods employee in furtherance of a plan and purpose to" commit a Hobbs Act robbery); Dkt. No. 17 at ¶4 (plea agreement in which defendant pled guilty to Count One, attempted Hobbs Act robbery of the El Paso food store). But that was *not* the crime that served as the predicate "crime of violence" upon which his 18 U.S.C. §924(c) conviction is based. The gun charge to which the defendant pled guilty was Count Four of the superseding indictment, which alleged that he used, carried and brandished a firearm during and in relation to the robbery charged "in Count Three of this Indictment." Dkt. No. 95 at 4; Dkt. No. 17 at ¶4. Count Three of the superseding indictment charged the defendant with the *completed* offense of committing a Hobbs Act robbery of the Speedway gas station. Dkt. No. 95 at 3 ("On or about September 6, 2019, in the State and Eastern District of Wisconsin, **BRANDON I. SMITH** did unlawfully obstruct, delay, and affect commerce and the movement of articles in commerce by robbery in that the defendants did unlawfully take and obtain U.S. currency from an employee of Speedway Gas Station, against his will by means of actual and threatened force, violence, and fear of injury. All in violation of Title 1, United States Code, Sections 1951(a) and 2."). The factual basis in the plea agreement—to which the defendant pled guilty—demonstrates that the Speedway robbery was a *completed,* not an attempted, Hobbs Act robbery:

7

> On September 6, 2019, at approximately 10:24 a.m., an armed and masked subject entered the Speedway Gas Station, located at 9091 North 76th Street, in Milwaukee, Wisconsin, and demanded and obtained money from the cashier. After receiving the cash, the subject fled. Speedway was a business involved in interstate commerce and the robbery affected interstate commerce.

Dkt. No. 17 at 16. The "subject" was the defendant, who was identified from surveillance footage at the Speedway, the clothing he was wearing, witness statements, Facebook posts and photos on the defendant's phone.

So—although the defendant heard correctly that there was a Supreme Court case holding that an attempted Hobbs Act robbery does not constitute a predicate "crime of violence" supporting a conviction under §924(c), the predicate "crime of violence" underlying the defendant's §924(c) conviction was the *completed* Hobbs Act robbery of the Speedway, not the *attempted* Hobbs Act robbery of the El Paso food store.

The defendant's letter references "the 65%-71% for the non-violent and violent case." Dkt. No. 131 at 1. The court suspects that the defendant is referring to the First Step Act of 2018. Section 3632(d)(4)(A) of Title 18 says that federally incarcerated persons are entitled to credits against their sentences for completing evidence-based recidivism reduction programming or activities, unless they are "ineligible" for such credits under 18 U.S.C. §3632(d)(4)(D). Under the First Step Act and the Bureau of Prisons' "PATTERN" risk assessment tool, "inmates convicted of non-violent crimes can earn 10 days of FSA time credit for every 30 days of successful participation in qualifying programming and productive activities," and persons with "minimum or low PATTERN recidivism risk score[s] over two consecutive assessments" can

8

Case 2:19-cr-00181-PP   Filed 06/24/24   Page 8 of 11   Document 136

earn additional credits. Bradford v. Warden, Case No. 23-cv-139, 2024 WL 1676787, at *2 (S.D. Ind. April 17, 2024). The court does not know whether the defendant qualifies as a "non-violent" offender under the First Step Act; it seems unlikely given that he committed an armed robbery of a gas station employee. Even if he does qualify, the court does not have any way of knowing what the defendant's PATTERN risk score is. It has no way of knowing whether he has been participating in qualifying programming at the institutions where he has been incarcerated. If the defendant believes that he should be receiving First Step Act programming credit, he should talk with his case manager at USP Atwater, where he is incarcerated.

Finally, the court received from the defendant on April 15, 2024 a second letter, in which he stated that he was not credited for his state time

> that the courts credit me for because the record dept. in the U.S.P. F.B.O.P. said my judge suppose to said on record when I got sentence that my state revocation time suppose to get ran concurrent with my robberys and 924(c) so I was also told to write my judge and ask for a tune up pre-up so my time to get credit and ran concurrent with whatever the case number for the robbery and 924(c) and send a memo to the F.B.O.P. so my time uh get corrected by the F./B.O.P. Respectfully I ask the court to specify state on record thru a memo that my state revocation time be ran concurrent with whatever case number for the robberies and 924(c) because they said it have to be "specify stated that way." Please and thank you.

Dkt. No. 132.

On August 27, 2019, the defendant was released to state supervision in Milwaukee County Circuit Court Case No. 12CF2411, dkt. no. 108 at ¶81, page 21, and Milwaukee County Circuit Court Case No. 16CF002378, dkt. no. 108 at ¶82, page 22. On October 13, 2019—while the defendant was on supervision

9

in those two cases—he was arrested for the federal crimes for which he has been convicted in this case. Id. at ¶81, page 22. The Wisconsin Department of Corrections revoked his supervision on April 3, 2020, and ordered him reincarcerated for eight months and twenty-eight days; he was released to another term of state supervision (and a federal detainer in this case) on September 30, 2020. Id. at ¶81, page 22; ¶82, page 24. So—when the court sentenced the defendant on March 9, 2022, he had served eleven months and seventeen days of revocation time. As recounted above, the court sentenced the defendant to serve forty-eight months on each of the two robbery counts. As the court explained at the sentencing hearing, that sentence was "adjusted-from the court's original sentence of fifty-nine (59) months each on Counts One and Three to run concurrently with each other, to take into account the eleven (11) months that the defendant had been in custody since the date of his arrest." Dkt. No. 113 at 3. In giving the defendant a sentence of forty-eight months instead of fifty-nine months, the court *did* give him credit for the revocation time. The Bureau of Prisons should not give the defendant credit for time the court already has credited in imposing sentence.

The defendant also asks the court to issue a memo stating that his revocation time should run concurrently with the robbery "and the 924(c)." Neither the court nor the Bureau of Prisons has the power to run any sentence "concurrently" with the seven-year sentence the court imposed on the §924(c) charge, because §924(c) itself mandates that "no term of imprisonment

10

imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. §924(c)(1)(D)(ii).

The court will deny the defendant's request for a "memo" specifically stating that his state revocation time must run concurrently with the crimes of conviction in this federal case. The court has given the defendant credit against the *robbery* sentence for his revocation sentence, and the court does not have the authority to run any revocation sentence (or any other sentence) concurrently with the sentence he is serving on the §924(c) conviction.

The court **DENIES** the defendant's *pro se* motion for a sentence reduction. Dkt. No. 131.

The court **DENIES** the defendant's *pro se* letter request for a "memo" stating that his revocation sentence runs concurrently with his federal sentence. Dkt. No. 132.

Dated in Milwaukee, Wisconsin this 24th day of June, 2024.

                              **BY THE COURT:**

                              _____
                              **HON. PAMELA PEPPER**
                              **Chief United States District Judge**